IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN B. FREEMAN, PH.D.,<br>107 West 25th Street, 2E<br>New York, NY 10001<br><br>*Plaintiff,*<br><br>vs.<br><br>U.S. CENSUS BUREAU<br>4600 Silver Hill Rd.<br>Suitland, MD 20746<br><br>U.S. DEPARTMENT OF COMMERCE<br>1401 Constitution Ave. NW<br>Washington, DC 20230<br><br>*Defendants.* | Case No. 25-cv- |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Dr. Jonathan B. Freeman, Ph.D. ("Dr. Freeman") brings this action against Defendant U.S. Census Bureau ("Census Bureau") and the U.S. Department of Commerce ("Commerce") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2. Venue is proper under 28 U.S.C. § 1391(e), as Plaintiff is a citizen of the State of New York, resides within this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

**Parties**

3. Plaintiff Dr. Jonathan B. Freeman, Ph.D. ("Dr. Freeman") is a resident of New York City in the State of New York.

4. Dr. Freeman is a professor and has conducted and published substantial academic research in the past using data obtained from government sources like the Census Bureau and, relevant here, submitted public records requests to the Census Bureau under FOIA.

5. Defendant Census Bureau is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Suitland, M.D. Census Bureau has possession, custody, and control of records to which Plaintiff seeks access.

6. Defendant U.S. Department of Commerce is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C. Commerce houses Defendant Census Bureau.

**Facts**

7. This case concerns two FOIA requests submitted for vital Census Bureau information and data concerning the testing of sexual orientation and gender identity ("SOGI") questions conducted to evaluate their suitability for inclusion in the agency's most important annual survey on the U.S. population. Last year, the Census Bureau conducted a congressionally funded test survey to collect SOGI nationwide from nearly half a million households. But none of that data has, as was promised, been released. Plaintiff sought that critical information and data under FOIA. But the Census Bureau has denied these requests citing a provision intended to protect personally identifiable information, despite (1) the significant quantity of non-personally identifiable information sought by the requests, (2) a previous representation by the Census Bureau that some of the information sought would be affirmatively released publicly, (3) authorization

2

within the statute the Bureau cites to release non-personally identifying information, and (4) the Bureau's past practice of releasing similar information in response to FOIA requests.

8.  The American Community Survey ("ACS") is an ongoing demographic survey of approximately 3.5 million U.S. households annually conducted by the Census Bureau that collects information about American life, including where people live, who resides in their households, languages spoken, level of education, and more.[1]

9.  In August 2024, the Census Bureau began testing questions about sexual orientation and gender identity ("SOGI") on the ACS, referred to as the "2024 ACS SOGI Test."

10. The Census Bureau's decision to pilot SOGI questions on the ACS was made following substantial demand from the public, researchers, and agencies across the federal government. Multiple federal agencies had requested standardized SOGI data to inform their programs and fulfill statutory obligations, including the Violence Against Women Act, Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Fair Housing Act of 1968, the Equal Credit Opportunity Act, the Omnibus Crime Control and Safe Streets Act of 1968, the Civil Rights of Institutionalized Persons Act, and the Violent Crime and Law Enforcement Act of 1994. Following this sustained interagency demand, Congress appropriated funds for the 2024 ACS SOGI Test in the FY 2023 Omnibus Appropriations bill.

11. ACS data is essential for enforcing civil rights protections, informing research and policymaking, and providing the nation's premier source of granular, representative, and continuous demographic data. Inclusion of SOGI measures in the ACS would provide the only large-scale, annually updated benchmark on populations defined by sexual orientation or gender identity ("SOGI populations") across states, counties, and localities. Such information is

---

[1] John Breeden II, *Then and Now: Census Bureau Readies Release of American Community Survey,* Next Gov (Dec. 12, 2024), https://perma.cc/5QY4-MSKJ.

indispensable for ensuring accurate and equitable distribution of federal resources; monitoring and enforcing civil rights laws and protections against discrimination; identifying disparities in health, education, housing, employment, and other critical domains; and supporting rigorous social science and policy research that guides federal, state, and local decision-making.

12. The 2024 ACS SOGI Test consisted of two distinct forms of testing: (1) Cognitive Testing, which involves in-depth interviews with a diverse sample of respondents to explore how they interpret SOGI questions, whether translations are effective across English and Spanish, and whether proxy respondents (respondents providing information about other individuals) are able to report SOGI information for other household members. These interviews provided qualitative insights into comprehension, sensitivity, and question design; and (2) Field Testing, which involved administering experimental SOGI questions to a large, nationally representative sample of approximately 480,000 housing units. The field test mirrors normal ACS data collection but tests variations in wording and response options for SOGI questions.[2]

13. The Census Bureau indicated that it would "release at least one report discussing the aggregate results of the 2024 ACS SOGI Test, after applying disclosure avoidance techniques."[3] The results from this important test survey have not been published.

14. The Census Bureau's contractor, RTI International, completed a final report describing the results of the Cognitive Testing, but this report has not been released as was expected. By contrast, although data collection for the Field Testing was completed, it is unclear if the final report describing the findings has been written or finalized. It also remains unclear

---

[2] Am. Cmty. Surv. Rsch. and Evaluation Program, *ACS Research & Evaluation Analysis Plan (REAP) Sexual Orientation and Gender Identity Test* (Apr. 17, 2024), https://perma.cc/N4EF-DXHN.
[3] Census Bureau, *supra* note 2.

whether the Census Bureau even still intends to analyze the Field Testing results at all or in as comprehensive a form as originally planned.

15.　　The Census Bureau established a set of benchmarks based on the Field Testing results of the 2024 ACS SOGI Test to determine whether SOGI questions are acceptable for inclusion in the official ACS annual survey moving forward. These benchmarks require analysis of not only the self-response data—the actual answers respondents provided to the SOGI questions and other comparable questions (e.g., disability status, race, ethnicity, age, or total income) through internet, paper, or in-person modes—but also "paradata," which are measures of how quickly and easily internet respondents interact with the new SOGI questions and other comparable questions, including the total time spent on each question and the extent to respondents activate help screens, navigate backward in the survey, or abruptly exit the survey at specific questions. Together, the self-response data and paradata allow the Census Bureau to evaluate the data quality of SOGI questions overall and the performance of specific versions tested in particular.[4]

16.　　In recent years, the Census Bureau has released data and reports from other SOGI collections under FOIA without withholding those records in full as the agency has done here. These FOIA releases have allowed independent researchers to analyze the agency's work and led to prominent publications. For example, between 2021 and 2023, the Census Bureau conducted separate field testing and analyses of self-response data and paradata for SOGI questions in the National Survey of College Graduates ("NSCG"), a national survey the Census Bureau administers in partnership with another federal agency. Plaintiff Dr. Freeman identified significant scientific anomalies in the Census Bureau's analyses and reporting, which had led the Bureau to erroneously deem certain SOGI measures unacceptable. When the underlying data were properly analyzed,

---

[4] Am. Cmty. Surv. Rsch. and Evaluation Program, *supra* note 4.

5

which was revealed through multiple FOIA requests to the Census Bureau, the interpretation of the findings—and the evaluation of the SOGI questions' acceptability—was substantively altered. Dr. Freeman published these errors in *Science Magazine*, detailed them in public comments, and his findings have since prompted both an ongoing investigation into potential violations of scientific integrity policies at the partnering agency and Congressional oversight. Public reporting shows that independent scientific experts corroborated the data concerns that Dr. Freeman outlined. Past experience therefore shows that the Census Bureau's disclosure of SOGI datasets via FOIA can be crucially important for validating agency analyses, ensuring the scientific accuracy of official decision-making, and safeguarding against errors that could otherwise undermine the adoption of SOGI measures in federal surveys of critical policy significance.

17. The Census Bureau's release of any data is governed by 13 U.S.C. §§ 8, 9. Although § 9(a) prohibits the disclosure of personally identifiable information, § 8(b) explicitly authorizes the release of statistical data provided that appropriate confidentiality safeguards are applied. The Bureau regularly implements these protocols through the Disclosure Review Board ("DRB"), which serves as its established mechanism for preparing public releases of data, tabulations, and research outputs.[5]

18. In response to Dr. Freeman's prior FOIA requests for SOGI testing data as part of the Census Bureau's NSCG, which revealed the errors described, the Census Bureau sent the data to its DRB, which cleared the majority of the data for release, with specific data suppressions to protect respondents' confidentiality. Exhibits ("Exs.") 1 & 2. Additionally, in response to Dr. Freeman's prior FOIA requests, the Census Bureau released two methodological SOGI testing reports. These reports are highly similar to the final report for ACS SOGI Test's Cognitive Testing

---

[5] Census Bureau Data Stewardship Program, *Census Bureau Data Stewardship Program* (May 27, 2022), https://perma.cc/N7CZ-4RWJ.

component. Exs. 3 & 4. Neither the data nor the reports were withheld by the Census Bureau in their entirety, as is the case here.

*ACS SOGI Test (Cognitive Testing) Request for a Report (DOC-CEN-2025-000402)*

19. On May 30, 2025, Dr. Freeman sent a FOIA request to the Census Bureau seeking the following information about the ACS SOGI Test's Cognitive Testing component:

> Copy of all non-data elements within the American Community Survey (ACS) Sexual Orientation and Gender Identity (SOGI) Cognitive Testing Report, produced by RTI International in or around November 2024.

20. The request further clarified:

> This request excludes any data tables, verbatim respondent quotes, or other data elements that may be protected from disclosure under Title 13.
>
> If the Disclosure Review Board has not yet evaluated the report's data elements for disclosure risk, I request the release of all non-data narrative content. Because the data and non-data elements of the report are reasonably segregable, I request that all non-exempt, non-data elements be segregated and released pursuant to 5. U.S.C. §552(b). Ex. 5.

21. On June 18, 2025, the Census Bureau denied this request, stating, in relevant part, the below. The response is attached as Ex. 6.

> We are unable to release these pursuant to FOIA Exemption 3, Title 5 United States Code Section 552(b) (3). Please be aware that information responsive to your request, contains information that is protected by Title 13, United States Code, Section 9, which requires that census records be used solely for statistical purposes and makes these records confidential. Exemption (b) (3) of the FOIA exempts from disclosure, records or portions of records that are made confidential by statute. Accordingly, to the extent we have withheld documents from you, we must deny your request containing Title 13 protected information.

22. On June 19, 2025, Dr. Freeman appealed the Census Bureau's decision on the basis that the Bureau's categorical denial failed to meet FOIA's requirement to segregate all non-exempt

portions of the record in response to a request for non-data narrative content describing cognitive testing methodology and results that is factual, non-deliberative, and plainly segregable. The appeal is attached as Ex. 7.

23. As of the date of this filing, Dr. Freeman has not received a response to his appeal.

*ACS SOGI Test (Field Testing) Request for Data (DOC-CEN-2025-000470)*

24. On July 21, 2025, Dr. Freeman sent a FOIA request to the Census Bureau seeking the following information about the ACS SOGI Test's Field Testing component:

> Copies of the following two internal data files related to the American Community Survey (ACS) Sexual Orientation and Gender Identity (SOGI) Test, which are currently in possession by Elizabeth Poehler (elizabeth.poehler@census.gov) and Donna Daily (donna.m.daily@census.gov):
>
> Self-Response File (CSV or JSON format) – This file contains individual-level deidentified self-response data from ACS SOGI Test respondents. Each row corresponds to a respondent, and each column corresponds to an individual survey item.
>
> Web Paradata Files (CSV or JSON format) – This file contains individual-level deidentified web paradata from ACS SOGI Test respondents. Each row corresponds to a timestamp (concatenated across respondents), and each column represents web navigation-related information through the survey.

Ex. 8.

25. On August 1, 2025, the Census Bureau denied this request, stating, in relevant part, the below.

> We are unable to release these pursuant to FOIA Exemption 3, Title 5 United States Code Section 552(b)(3). Please be aware that information responsive to your request, contains information that is protected by Title 13, United States Code, Section 9, which requires that census records be used solely for statistical purposes and makes these records confidential. Exemption (b) (3) of the FOIA exempts from disclosure, records or portions of records that are made confidential by statute. Accordingly, to that extent we have withheld

          documents from you, we must deny your request containing Title 13
          protected information.

Ex. 9.

26. On August 4, 2025, Dr. Freeman appealed the Census Bureau's decision on the basis that the denial is an improper application of Exemption 3, because Title 13 does not prohibit the release of the requested data, so long as confidentiality safeguards are applied through the DRB's existing protocols. The appeal is attached as Ex. 10.

27. The Census Bureau routinely releases the individual-level data ((i.e., microdata) from the official ACS survey on an annual basis as a 1-Year ACS Public Use Microdata Sample ("PUMS") file, where millions of respondents' individual data are made available to the public after being deidentified and processed through the DRB's disclosure avoidance protocols (e.g., data suppression, data coarsening, and/or noise infusion) to ensure no respondent can be reidentified. The Field Testing data from the 2024 ACS SOGI Test is effectively a smaller version of a 1-Year ACS PUMS file. It is therefore feasible and consistent with 13 U.S.C. §§ 8, 9 for the Census Bureau to release the individual-level 2024 ACS SOGI Test data so long as normal confidentiality safeguards are applied through the DRB's existing disclosure avoidance protocols. Although annual ACS PUMS files have not yet included SOGI data—the very purpose of the 2024 ACS SOGI Test—other national surveys administered by the Census Bureau have long done so in their public-use microdata files, including the National Health Interview Survey ("NHIS")[6], the

---

[6] Nat'l Ctr. for Health Stats., *2023 NHIS Questionnaires, Datasets, and Documentation*, U.S. C.D.C., https://perma.cc/Z83S-BNTS.

National Crime Victimization Survey ("NCVS"),[7] and the Household Trends and Outlook Pulse Survey ("HTOPS"),[8] all while rigorously safeguarding respondent confidentiality.

28. Dr. Freeman, in this request, seeks release of microdata files from the ACS SOGI Test that will enable the analyses described in the Census Bureau's official April 2024 Research Evaluation and Analysis Plan.[9] In ACS public-use microdata files (PUMS files), the Census Bureau has acknowledged that "[t]he main disclosure avoidance method used is to limit the geographic detail shown in the files."[10] Each year, the Bureau releases 1-Year PUMS files that report individual-level data using geographic areas with a minimum size of 100,000 residents. By comparison, the Research Evaluation and Analysis Plan for the 2024 ACS SOGI Test only requires analyses that distinguish households in urban versus rural locations, which corresponds to 265,149,027 residents and 66,300,254 residents, respectively, according to 2020 Census definitions.[11] Given this coarse level of aggregation, it is highly feasible for the Census Bureau to release the requested microdata while redacting all other geographic variables and applying its existing isclosure-avoidance protocols. This approach would provide the public with the analytic utility necessary to evaluate the ACS SOGI Test while fully safeguarding respondent confidentiality, fulfilling requirements under both FOIA and Title 13.

29. As of the date of this filing, Dr. Freeman has not received a response to his appeal.

*Exhaustion of Administrative Remedies*

30. As of the date of the Complaint, Defendant has failed to notify Dr. Freeman of a determination regarding his appeals. Through Defendant's failure to respond within the time limits

---

[7] Bureau of Just. Stats., *National Crime Victimization Survey (NCVS Series)*, Nat'l Archive of Crim. Just. Data, https://perma.cc/659D-ELR7.
[8] U.S. Census Bureau, *Household Pulse Survey Public Use File (PUF)*, https://perma.cc/SR3A-W378.
[9] Am. Cmty. Surv. Rsch. and Evaluation Program, *supra* note 4.
[10] U.S. Census Bureau, *Public Use Microdata Sample (PUMS) Accuracy of the Data (2019-2023)* 4, https://perma.cc/JP3G-VF6N.
[11] U.S. Census Bureau, *2020 Census Urban Areas Facts* (June 2023), https://perma.cc/PY56-3B7G.

required by law under 5 U.S.C. § 552 and 15 C.F.R § 4.6(b), Dr. Freeman has constructively exhausted administrative remedies.

## CLAIM FOR RELIEF

### Count 1 (Violation of FOIA, 5 U.S.C. § 552)

31. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

32. By failing to respond to Plaintiff's appeals with determinations within the statutorily mandated time period, and by failing to carry out its duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive non-exempt records Defendants have violated its duties under 5 U.S.C.§ 552.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Order Defendants to conduct searches for any and all records responsive to Plaintiff's FOIA requests using search methods reasonably calculated to lead to discovery of all responsive records;

2. Order Defendants to transmit any responsive ACS SOGI Test data, consistent with 13 U.S.C. §§ 8, 9 and other applicable statutes, to the Census Bureau's DRB for disclosure review and processing so that anonymized non-exempt data can be released with respondents' geographic data limited solely to an urban or rural classification. Enjoin Defendants from continuing to withhold any and all non-exempt responsive records;

3. Order Defendants to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

4. Award Plaintiff his costs, attorneys' fees, and other disbursements for this action; and

5. Grant any other relief this Court deems appropriate.

Dated: September 22, 2025

Respectfully submitted,

/s/ *Daniel A. McGrath*

Daniel A. McGrath
(S.D.N.Y. Bar No. 5541198)
Anisha N. Hindocha*
(Bar No. 1725159)
Robin F. Thurston*
(Bar No. 7268942)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmcgrath@democracyforward.org
ahindocha@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiff*

**pro hac vice* forthcoming