UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN B. FREEMAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. CENSUS BUREAU, et al.,<br><br>　　　　　Defendants. | Civil Action No. 25-7834 (LJL) |

### DECLARATION OF ELIZABETH POEHLER

Pursuant to 28 U.S.C. Section 1746, I, Elizabeth Poehler, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.　　I serve as the Assistant Division Chief (ADC) for Survey Methods in the American Community Survey Office (ACSO), United States Census Bureau ("the Census Bureau" or "Census"). I have served in this role since August 1, 2021. In this role, I am responsible for technical and programmatic oversight of research and testing for the ACS.

2.　　The ACS is an ongoing survey conducted by Census that collects detailed social, economic, housing, and demographic information from a sample of households across the 50 states, the District of Columbia, and Puerto Rico. Data is collected via self-response modes (internet and paper) as well as interviewer-administered modes (telephone and in person). The ACS conducts regular research, testing, and evaluations aimed at improving the survey. The research informs potential changes to the survey including changes to data collection methods and question wording.

3. I make the statements herein on the basis of personal knowledge, as well as on information provided to me in my official capacity.

**Plaintiff's FOIA Requests**

4. On or about May 30, 2025, Plaintiff submitted a FOIA request to Census through the Department of Commerce's electronic FOIA submission and tracking system, seeking, "[A c]opy of all non-data elements within the American Community Survey (ACS) Sexual Orientation and Gender Identity (SOGI) Cognitive Testing Report, produced by RTI International in or around November 2024. This request excludes any data tables, verbatim respondent quotes, or other data elements that may be protected from disclosure under Title 13," and, "If the Disclosure Review Board has not yet evaluated the report's data elements for disclosure risk, I request the release of all non-data narrative content. Because the data and non-data elements of the report are reasonably segregable, I request that all non-exempt, non-data elements be segregated and released pursuant to 5 U.S.C. § 552(b)."

5. On or about June 18, 2025, Census responded to Plaintiff's FOIA request, and informed Plaintiff that it had assigned the administrative tracking number DOC-CEN-2025-000402 to the request described above. The letter also informed Plaintiff that Census was unable to release the requested records pursuant to FOIA Exemption 3 (5 U.S.C. § 552(b)(3)). The letter explained that information responsive to Plaintiff's request contained information that is protected by Title 13, United States Code, Section 9, which prohibits the use of Census information "for any purpose other than the statistical purpose for which it is supplied" and prohibits "publication whereby the data furnished by any particular establishment or individual under this title can be identified." The letter explained that FOIA Exemption 3 protects from disclosure records or portions of records that are exempted from disclosure by statute.

Accordingly, Census informed Plaintiff that it denied Plaintiff's request because the request sought records containing information protected from release by 13 U.S.C. § 9.

6. On or about July 21, 2025, Plaintiff submitted another FOIA request to Census through the Department of Commerce's FOIA submission and tracking system, seeking:

> "[C]opies of the following two internal data files related to the American Community Survey (ACS) Sexual Orientation and Gender Identity (SOGI) Test, which are currently or were previously in possession by Elizabeth Poehler (elizabeth.poehler@census.gov) and Donna Daily (donna.m.daily@census.gov):
>
> Self-Response File (CSV or JSON format) – This file contains individual-level deidentified self-response data from ACS SOGI Test respondents. Each row corresponds to a respondent, and each column corresponds to an individual survey item.
>
> Web Paradata File (CSV or JSON format) – This file contains individual-level deidentified web paradata from ACS SOGI Test respondents. Each row corresponds to a timestamp (concatenated across respondents), and each column represents web navigation-related information through the survey."

7. On or about August 1, 2025, Census responded to Plaintiff's FOIA request, and informed Plaintiff that it had assigned this second request the administrative tracking number DOC-CEN-2025-000470. The letter also informed Plaintiff that Census was unable to release the requested records pursuant to FOIA Exemption 3 (5 U.S.C. § 552(b)(3)). The letter explained that information responsive to Plaintiff's request contained information that is protected by Title 13, United States Code, Section 9, which prohibits the use of Census information "for any purpose other than the statistical purpose for which it is supplied" and prohibits "publication whereby the data furnished by any particular establishment or individual under this title can be

identified." The letter explained that FOIA Exemption 3 protects from disclosure records or portions of records that are exempted from disclosure by statute. Accordingly, Census informed Plaintiff, it denied Plaintiff's request because the request sought records containing information protected from release by 13 U.S.C. § 9.

8. I have personally reviewed the documents in question.

### 2024 ACS Sexual Orientation and Gender Identity (SOGI) Testing

9. In or around September 2023, the Census Bureau announced a proposal to begin testing questions about the sexual orientation and gender identity of respondents on the ACS. The purpose of the testing was to assess the feasibility of adding SOGI questions to the ACS. Specifically, the Census Bureau asked survey respondents to identify their sex assigned at birth, and for persons 15 years or older to identify their current gender and their sexual orientation. The announcement indicated that Census would conduct a field test where questionnaires that included questions on sexual orientation and gender identity would be sent to respondents. Half of the respondents would receive one version of the questions and half would receive a different version of the questions.[1]

10. In or around August 2024, Census began conducting ACS SOGI field testing. In or around February 2024, Census began conducting ACS SOGI cognitive testing in collaboration with RTI International, a Census Bureau contractor. Cognitive testing typically consists of one-on-one interviews using a draft questionnaire in which respondents describe their thoughts while answering survey questions. Cognitive interviews provide an important means of learning about

---

[1] *See* Agency Information Collection Activities; Submission to the Office of Management and Budget (OMB) for Review and Approval; Comment Request; American Community Survey Methods Panel: 2024 Sexual Orientation and Gender Identity Test, 88 Fed. Reg. 64404 (Sept. 19, 2023), *available at* https://www.govinfo.gov/content/pkg/FR-2023-09-19/pdf/2023-20256.pdf.

respondents' problems with the questionnaire directly from them. RTI prepared a draft report concerning the results of the cognitive testing.

11. On or about January 20, 2025, the President issued Executive Order (EO) 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*. In relevant part, the EO directs Executive Branch agencies to use the term "sex" and not "gender" in all applicable Federal policies and documents and take all necessary steps to end the Federal funding of gender ideology.

12. Following the issuance of the EO, the Census Bureau suspended RTI's cognitive testing work and the Census Bureau's work on the gender identity question.[2] RTI and the Census Bureau also stopped work on RTI's draft report, which had not been finalized. The draft RTI report and the respondent information from the test instrument are not available to Census employees for additional research or additional editing as of the date of this declaration in accordance with EO 14168. The draft RTI report includes the wording that was tested, an overview of recruiting methods and interview procedures, research results, and working recommendations. The research results address specific research objectives and describe in detail difficulties with question wording or responses, including quotes from respondents along with summary counts, such as the number of respondents who identify as a sexual or gender minority. Data and quotes from respondents are integrated into the draft narrative portions of the report. They are not segregated solely into tables or appendices.

## **Title 13 and Exemption 3 of the FOIA**

---

[2] The only component of the 2024 SOGI testing on which the Census Bureau is continuing work after the issuance of the EO is the sexual orientation field test evaluation. However, no such work has been completed and no report concerning that testing has been finalized.

13. FOIA Exemption 3 allows agencies to withhold information prohibited from disclosure by another federal statute. The Census Bureau and its employees are bound by Title 13, Sections 8 and 9, which provide broad protection from the disclosure of all Census data. These protections extend to all data revealed on behalf of survey respondents, not just their names or addresses. For example, the ACS collects data on over 40 topics on social, economic, housing, and demographic characteristics, including questions on income, race, citizenship status, and disabilities. All of the data collected is considered confidential.

14. The requested RTI report is a draft, and in its current form contains data protected from release by Title 13. The RTI report was an in-progress draft that ultimately would have been finalized, subjected to data protection techniques, and released to the public. However, when EO 14168 was issued, work on the report ceased before any of these actions occurred (including the removal of Title 13-protected data) to render the report in a final form that could be released publicly. As a draft report on which work was suspended, it contains over 100 comments and edits that would need to be addressed internally before the report would be considered final. A review of the data in the report would also need to be conducted to ensure that it meets Census Bureau standards for ensuring the confidentiality of responses guaranteed under 13 U.S.C. § 9 protections.

15. Generally, when the Census Bureau chooses to create a report from raw data, it must ensure that no protected data is improperly released as set forth in 13 U.S.C. § 9. To ensure that the Census Bureau does not release information protected from release by 13 U.S.C. § 9 or other statutes, the Census Bureau convenes the Disclosure Review Board (DRB)[3]

---

[3] Additional information about the DRB is available here:
https://www2.census.gov/foia/ds_policies/ds025.pdf (last accessed January 12, 2026).

to review a planned data release to ensure that data confidentiality is maintained. The DRB is comprised of twelve voting members and is responsible for reviewing proposed external releases of information products to prevent unauthorized disclosure of confidential respondent information; overseeing the development of confidentiality protection policies and methodologies; communicating approved policy and approved techniques to the subject matter areas for application in producing data for public dissemination; and assisting in the coordination of disclosure review policy. To ensure that no protected data are disclosed, the DRB may decide to remove or modify the original data to protect confidentiality. These statistical methods include techniques such as suppression, data swapping, or noise injection. These techniques may result in the removal, modification, or disguising of the original data to protect confidentiality and comply with Title 13. Any report produced following the application of these techniques to remove information protected by 13 U.S.C. § 9 would be a new, unique document (which, as relevant here, has never been created).

16. Further, the self-response and web paradata files that Plaintiff requested are wholly comprised of raw census data that are protected from disclosure under 13 U.S.C. § 9. The self-response file contains information or data collected from respondents during the test collection, often simply called survey responses. The web paradata file contains the behaviors captured from respondents during their interaction with the test collection instrument, such as keystroke data or mouse-click history, including how the respondent answered the question, and if the respondent accessed help text or navigated to a previous question in the survey. These are raw data files, not a summary data product or tabulation.

**Exemption 5 of the FOIA: Deliberative Process Privilege**

17. Here, the requested RTI report is an unfinished draft with no operative effect. No final version of the report exists. Work on the incomplete report was suspended as a result of EO 14168 before any final document was created or final decision rendered.

18. Further, the underlying research was intended to evaluate the suitability of inclusion of gender identity questions on the ACS, which is no longer under consideration after the issuance of EO 14168. Census employees and contractors are prohibited from working on the RTI report or the underlying data related to gender identity. The draft RTI report and the respondent information from the test instrument are not available to Census employees for additional research or additional editing as of the date of this declaration.[4]

19. Disclosure of the information at issue would risk public confusion. Here, Census was merely *testing* questions for inclusion on the ACS and had not implemented any changes. This would generate public confusion, as priorities changed after RTI began drafting the report, but before the report was completed and before Census made any final decisions or recommendations.

20. Additionally, if the draft report were to be released, it would have a chilling effect on Census Bureau employees and contractors, as it would negatively impact their willingness to share candid or controversial opinions and recommendations regarding future Census survey approaches and data collection. The Census Bureau and its employees and contractors are likely to suffer an injury to the decision-making process as ideas that did not bear fruit and incomplete data analysis will be subject to scrutiny even where no final decision occurred.

---

[4] The draft RTI report contained information related to both sexual orientation research and gender identity research.

21. Testing and interim statistical analysis are crucial to the Census Bureau's mission and effective operation. The testing process ensures that survey changes are well supported, well researched, and facilitate the collection of quality data. If this process and the findings are subject to public scrutiny before they are complete, it will lead to reluctance from the Census Bureau and its employees to engage in the testing process necessary for the Census Bureau's mission.

## Segregation of Non-Exempt Information

22. After reviewing the requested records, no portion of the requested material can be segregated for release.

23. As an initial matter, pursuant to EO 14168, the Census Bureau cannot undertake any further processing of the gender identity portion of the ACS test, which is encompassed in both the draft RTI report and the requested data files.

24. With respect to the draft RTI report, in its current form, it contains data protected from release by Title 13. The draft RTI report contains tables summarizing response data and quotations from respondents, as well as text describing those materials. The information protected from disclosure by 13 U.S.C. §§ 8 and 9 is interspersed throughout it, including in the narrative portions of the report. Further, the Census Bureau would have to apply disclosure avoidance techniques to ensure that no data protected under Title 13 is released. These techniques do not just involve removing or redacting data tables and lists, but applying the techniques to the entire contents, including the narrative portions, of the draft report. The Census Bureau has not yet applied any of these techniques to the draft RTI report. Any report produced following the application of these techniques would be a new, unique document. As such, portions of the draft report cannot be segregated and released.

25. Further, the entire report is subject to deliberative process protection, and portions of the report cannot be segregated because the selection of what factual information, findings, and analysis to include in the report is itself deliberative as it informs the Census Bureau's deliberations on final decisions and recommendations. This is underscored by the sensitive nature of the Census Bureau's research and the specific focus on wording of test questions.

26. With respect to the requested self-response and paradata files, nothing is segregable because the entire files are exempt. The files consist of raw Census data protected from disclosure under Title 13. All data in the files are protected from disclosure. The Census Bureau is prohibited from publicly releasing even a portion of these data files, even if certain data fields are removed. It is impossible for Census to segregate information in the data files, as releasing any field in the data files would reveal information protected by Title 13 and/or require the creation of a wholly new data file.

27. The Census Bureau releases 1-year and 5-year Public Use Microdata Samples ("PUMS") files for the official ACS on an annual basis. However, the ACS historically has not created PUMS datasets for content tests and did not do so for the 2024 SOGI tests. The ACS has never released public use microdata files from *testing* efforts. Therefore, no such file exists to be released and the Census Bureau never planned to create such a file. The annual ACS PUMS files would not include SOGI data from the test because the test was conducted with a separate sample of cases and not part of the regular ACS.

28. The Plaintiff's request does not present a situation wherein the Census Bureau can sort a pre-existing database or otherwise readily reproduce the data in the requested format, while meeting its obligations to protect the confidentiality of the data as required under Title 13. Disclosure avoidance analysis is not a reproduction or sorting of existing data, but a discipline

requiring the exercise of additional expertise and discretion in the selection and application of statistical methods. This work is not merely sorting, summing, or removing data fields, but the creation of a new data file.

29. No information in the data may be segregated for release without revealing information properly withheld pursuant to FOIA Exemption 3. No information in the draft RTI report may be segregated for release without revealing information properly withheld pursuant to FOIA Exemption 3 and FOIA Exemption 5.

### Plaintiff's Prior FOIA Requests

30. In prior FOIA requests, Plaintiff requested records regarding the National Survey of College Graduates ("NSCG"). The NSCG data that the Census Bureau previously provided in response to Plaintiff's requests are summary-level statistics of web paradata for each question. One metric was provided on the percentage of respondents who exited the interview before completing it. The previously provided NSCG information does not include any individual response data or individual paradata, as Plaintiff requested for the ACS. The Census Bureau did not provide individual-level NSCG data to Plaintiff in response to his prior FOIA requests.

31. In addition, the Census Bureau did not provide Plaintiff with incomplete, draft reports in response to his prior FOIA requests for records related to NSCG. While the Census Bureau provided NSCG reports on evaluation and testing in response to Plaintiff's FOIA request, the reports were complete, final deliverables that had gone through disclosure review and did not contain any information protected by Title 13. The Census Bureau did not conduct disclosure review of the NSCG reports solely as a result of Plaintiff's prior FOIA request. Rather, the final deliverable was processed and cleared through the DRB's disclosure avoidance protocols as part of the Census Bureau's regular procedures. The Census Bureau did not release incomplete or draft reports comparable to the RTI report in response to these prior requests.

_____
Elizabeth Poehler
Assistant Division Chief, Survey Methods
U.S. Census Bureau

Executed this 12th day of January 2026.